# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ENOCH EUGENE BROADNAX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:06CV696 |
| | ) | |
| J.T. BULLOCK, Superintendent, | ) | |
| Hoke Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

**Sharp, Magistrate Judge**

Petitioner Enoch Eugene Broadnax, a prisoner of the State of North Carolina, on February 27, 2001, in the Superior Court of Rockingham County, was convicted by a jury of second-degree murder and possession of a firearm by a felon following a capital trial. Superior Court Judge Peter M. McHugh sentenced Petitioner to a term of 251 to 311 months of imprisonment for the second-degree murder conviction, and a consecutive 20 to 24 months for the firearm-possession conviction. Petitioner was represented at trial by attorneys Walter J. Etringer and Scott Skidmore.

Petitioner appealed to the North Carolina Court of Appeals, but that court found no error. *State v. Broadnax*, No. COA03-724, 2004 WL 1325793 (N.C. App. June 15, 2004)(unpublished). Petitioner was represented on appeal by attorney D. Tucker Charns.

Petitioner Broadnax filed two *pro se* post-conviction motions in Superior Court. On or about February 14, 2005, he filed a motion styled, "Motion For Preservation and Test All Physical Evidence not Test [sic] Prior to Trial." On May 16, 2005, he filed a Motion for Appropriate Relief ("MAR"), and amended that motion on June 2. On April 27, 2006, Superior Court Judge Richard W. Stone denied both Petitioner's Motion for Preservation and his MAR. Petitioner requested certiorari review of these denials, but on June 26, 2006, the North Carolina Court of Appeals denied the petition for a writ of certiorari.

Thereafter, Petitioner Broadnax timely filed in this Court the habeas corpus petition now before the Court.

### Claims of the Petition

In his *pro se* habeas corpus petition, Petitioner Broadnax brings a multitude of claims. He contends that: (1) the State violated his right to due process by dismissing his claim of newly-discovered evidence; (2) the State violated his right to due process by failing to instruct the jury on self-defense and dismissing his claim to that effect; (3) his trial attorneys were ineffective for failing to challenge an erroneous self-defense instruction; (4) his appellate attorney was ineffective for failing to argue ineffective assistance of trial counsel for failing to challenge an erroneous self-defense instruction; (5) the trial court violated due process by failing to read a note from the jury verbatim in open court; (6) his trial attorneys were ineffective for failing to move for a mistrial on the basis of the trial court's error in failing to read the note verbatim; (7) his appellate counsel was ineffective for not raising on

-2-

appeal the trial court's error in failing to read the note verbatim; (8) the State violated due process by failing to prove malice in connection with his second-degree murder conviction; (9) he received ineffective assistance of trial counsel in a number of respects; (10) the State violated due process by withholding evidence; (11) he received an aggravated sentence without jury findings in support thereof; and (12) he received ineffective assistance of appellate counsel as a result of counsel's failure to allege error in his aggravated sentence.

### Statement of Facts

The North Carolina Court of Appeals summarized the evidence adduced at Petitioner's trial as follows:

> The events that gave rise to defendant's convictions occurred at approximately 2:30 a.m. on 23 November 1999 when Timothy Galloway ("Galloway") was shot in front of Hickory Square Apartments. Earlier that evening defendant, Galloway, and several friends of defendant were at the house of an acquaintance when a fight broke out in the bathroom. During the fight, Michael Artis, one of defendant's second or third cousins, was beaten by Galloway. Defendant, Michael Artis, and Wayne Artis left the house and went to Michael Artis's house. From Michael Artis's house, defendant and Michael Artis left in order to look for the people that had beaten Michael Artis. Fifteen minutes later, Wayne Artis met up with Michael Artis and defendant. Defendant then exited Michael Artis's vehicle and entered Wayne Artis's vehicle. Wayne Artis and defendant proceeded to the Hickory Square Apartments. Defendant directed Wayne Artis where to park, and defendant exited the vehicle.

> Charles Broadnax testified for the State as follows: At approximately 2:30 or 3:00 a.m. on 23 November 1999, Charles Broadnax was standing outside of the Hickory Square Apartments. Galloway was present at the apartment complex as well. Charles Broadnax saw a truck drive up to the complex and saw defendant get out of the truck. Defendant walked towards Galloway and asked Galloway two or three times "Why did you do it?" Charles Broadnax also heard the words, "Don't pull your hand out of your

-3-

pocket" or "Don't go into your pocket." He then heard a few shots and saw Galloway fall to the ground. Defendant then told Charles Broadnax to shut his mouth. Charles Broadnax ran off, but he returned ten minutes later. After determining that Galloway was dead, Charles Broadnax looked through Galloway's pockets. He testified that he had not seen Galloway with a weapon, nor did he find a weapon in Galloway's pocket or see any weapons laying around Galloway's body.

*Broadnax*, 2004 WL 1325793, at *1.

## The Habeas Corpus Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, federal law clearly established by the Supreme Court, or (2) resulted in a decision that was based upon an unreasonable determination of the facts. Further, a determination of factual issues by the state court shall be presumed correct, and can be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Discussion

### A.   Claims (2) – (8), and (11) and (12)

On review of the habeas corpus petition and the arguments and exhibits of the parties, the Court finds that many of the claims of the *pro se* petition should be dismissed summarily. Claims (2)(3)(4)(5)(6)(7)(8)(11) and (12) lack merit for reasons that do not require extended discussion. In Claim (2), Petitioner Broadnax asserts constitutional error in the trial court's instruction to the jury concerning Petitioner's defense of self-defense. It is difficult to

-4-

decipher Petitioner's precise argument on this claim, but he does assert that "the trial court failed to instruct his jury on the first two elements of self-defense." (Pleading No. 1, Petition ("Pet.") at added page 4.) Reviewing Petitioner's MAR, where he first attempted to raise this claim, it appears that Petitioner believes the jury should have received, but did not receive, an instruction on imperfect self-defense. (Pleading No. 7, State's Supp. Br., Ex. 6 at 4-6.) The trial transcript reveals, however, that the trial judge gave an instruction, proper under state law, that encompassed imperfect self-defense, although he did not use that technical term. *See* Pleading No. 7, Ex. 1, Tr. of Trial ("Tr.") at 15-18; *cf. State v. Bush*, 307 N.C. 152, 159 (1982). Moreover, since the jury instructions challenged under this claim turn on state law, they are generally beyond the scope of habeas corpus review unless they were so fundamentally unfair as to infect the entire trial and violate due process. *See Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). As noted, there was in fact no error of state law since the trial court instructed the jury on both perfect self-defense and imperfect self-defense, defenses that if accepted by the jury could have resulted in verdicts of either not guilty of any offense, or guilty of only voluntary manslaughter. The verdict sheet given to the jury reflected these possible verdicts. (Pleading No. 7, Ex. 1 at 32.) Since Claim (2) is without merit under either state or federal law, Petitioner's Claims (3) and (4), which allege attorney incompetence for failure to object or appeal regarding this matter, are likewise without merit.

In Claim (5), Petitioner contends that the trial court violated due process by failing to read a note from the jury verbatim in open court. In Claims (6) and (7), he raises arguments concerning the same subject matter, this time casting his claims in terms of incompetence of trial or appellate counsel. But the record reveals no error by the trial court. Petitioner alleges that the jury in his case deliberated for three days and sent out seven notes. The trial judge read each one in open court except for note number seven, which Petitioner later found out read, "The jury is "'hung'" 11 to 1. No hope on this." (*Id.*, Ex. 14, Attach. 10.) Petitioner argues that it was "coercive"of the jury's verdict for the trial court to fail to read this note verbatim and to send the jury back for further deliberations.

On review, the Court finds there is no constitutional requirement that a jury note be read verbatim in court, as opposed to being summarized, and there was nothing inherently coercive in the decision of the trial judge in Petitioner's case to instruct the jury to continue its deliberations. Petitioner points to no inappropriate specific instruction given to the jury. The record shows that the judge stated in open court at the time in question that "the jury believes itself to be deadlocked," and stated his intention to proceed with additional instructions on the duty to consult. He then delivered a modified *Allen* charge. (*Id.*, Ex. 14, Attach. H.) Petitioner has shown no error of state law or federal law in this procedure. Claims (6) and (7), reformulated as Sixth Amendment claims, are without merit because Claim (5) has no merit.

Petitioner Broadnax next claims (Claim 8) that the State violated due process by failing to prove malice in connection with his second-degree murder conviction. This claim is tantamount to a claim of insufficient evidence. Such a claim is reviewed by a habeas court under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. The North Carolina Court of Appeals adjudicated Petitioner's claim as follows:

> Defendant next contends that the trial court erred by failing to grant defendant's motions to dismiss at the close of the State's evidence and at the close of all the evidence. Specifically, defendant argues that the State did not present sufficient evidence that defendant did not act in self defense. . . .

> Second degree murder is the unlawful killing of another human being with malice but without premeditation and deliberation. *State v. Brown*, 300 N.C. 731, 735, 268 S.E.2d 201, 204 (1980). "The intentional use of a deadly weapon gives rise to a presumption that the killing was unlawful and that it was done with malice." *State v. Judge*, 308 N.C. 658, 661, 303 S.E.2d 817, 820 (1983).

*Broadnax*, 2004 WL 1325793, at *3.

Under North Carolina law, the intentional use of a firearm gives rise to a presumption of malice. It is thus apparent that the state court's adjudication of this claim did not result in an unreasonable application of settled federal law. *See* 28 U.S.C. § 2254(d)(1). In fact, the adjudication was clearly correct under state law and does not offend federal law.

Claims (11) and (12) also fail as habeas claims. Petitioner contends that he received aggravated sentences without jury findings in support thereof, and he received ineffective

assistance of appellate counsel for counsel's failure to argue error in his aggravated sentences. Petitioner's claims have no factual basis. He was sentenced within the presumptive range under state law, considering the crime and his criminal record level, with respect to both of his convictions. (Pleading No. 7, Ex. 1 at 36, 38.) Therefore, no jury findings were required to support the sentences he actually received, and his sentences did not run afoul of *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004)(facts increasing a sentence beyond the statutory maximum, meaning the maximum in the presumptive range, must be found by a jury). Accordingly, Petitioner's substantive claim (Claim 11) has no merit, and his assignment of attorney incompetence (Claim 12) is likewise without merit.

**B.      Claim (1)**

In Claim (1), Petitioner Broadnax claims that the State of North Carolina violated his right to due process by dismissing his claim of newly-discovered evidence. Petitioner asserts that he received an affidavit from Antonio Bridges in May 2005, four years after his trial, averring that Bridges purchased a chrome .380 handgun from Wallace Brim, known as "Rock Brim," on the night of the crime. Petitioner says that this gun was stolen from the crime scene on the morning of November 23, 1999. He says that days before Petitioner's trial Charles Broadnax admitted to the prosecutor for the first time that he had stolen money from the crime scene. Charles Broadnax admitted that he took $100 from the body of victim Timothy Galloway. According to Petitioner, "the State" knew that Broadnax had stated in earlier statements that he ran directly to Rock Brim's apartment after he left the body.

-8-

Petitioner contends that this new evidence suggests that Broadnax stole not only money from the victim, but also stole a gun from the body of victim Galloway, and gave or sold the gun to Rock Brim. Rock Brim, as reported by the "newly discovered evidence" (the Bridges affidavit) ultimately sold the gun in question to Antonio Bridges. (Pleading No. 1, Pet. at 5 *et seq.*)

Petitioner states that the State additionally knew of the "exculpatory statements" of Franky Cannon and Joseph Jenning that demonstrated that Timothy Galloway should have had close to $1,000 on him when he was killed, since that is how much money he had on him when they parted company with him earlier that morning. Petitioner continues:

> Being that Antonio Bridges affidavit verifies where all the money, marijuana and gun went to, and for how much they knew or should [have] known under common-sense analysis whenever a crack cocaine addict steals or robs someone the local drug dealer that's available that time of morning will most likely receive the stolen property taken from the person robbed. Since their key witness confessed to taking one piece of evidence, it is only normal to say or feel he took, he took all the other evidence listed in the affidavit, which is enough evidence for any jury to draw [an] inference that [it] is the chrome gun removed from the crime scene along with the money and marijuana given to Mr. Bridges. The State witness [Charles Broadnax] even testified he [had] seen a chrome gun on the scene. The Petitioner's gun was identified as blue steel and brown. . . . [The newly-discovered evidence] weigh[ed] heavily upon the guilt or innocence and whether Petitioner was even eligible for the death penalty. Being that this evidence was discovered after his verdict, the State violated Petitioner's due process rights when they dismissed this claim under the procedural bar listed in their response to his Motion for Appropriate Relief.

(*Id.*) Presumably, Petitioner Broadnax contends that the Bridges affidavit calls into question some of Charles Broadnax's trial testimony, indicates that the victim had a gun on the night

-9-

of the shooting, and tends to support Petitioner's defense that he acted in self-defense in

shooting the victim who was in the act of reaching for a gun.

Petitioner did not attach the Bridges affidavit to his habeas petition, but includes it as

an attachment to his responsive brief. (Pleading No. 15, Petr.'s Br.) The affidavit reads in

full:

> I, Antonio Bridges, being competent to testify, having first-hand knowledge of the facts stated below and being first duly sworn, depose and say: on or about the morning of November 23, 1999 I was hanging out at my friends' "Soffee" house in Woodview apartment. During the time I was there Wallace Brim (a.k.a. Rock) repeatedly kept coming over to purchase Crack cocaine. Each time Wallace Brim came He would purchase a hundred dollars worth and paid with a one hundred bill. On his last visit he asked me to give him four (4) crack rocks and asked me to hold on to the change. Later on that morning Wallace Brim sent Chris Wilson to get me to come next door to Chris' place. When I got over there Chris motioned me to the back where [R]ock was waiting. Rock Brim pulled out a gun and asked me how much I would give him for it. The gun was a .380 handgun, dull chrome in color, with a black pistil [sic] grip. I told him that I would give him twenty dollars, then Rock asked me how much I would pay for a holster with it. I told him that I would give him I would give him ten dollars worth more of Crack cocaine. Rock took my offer and later on that evening he sold Soffee some marijuana and I had heard that Duke (Tim Galloway) had been shot and robbed. I did not know at the time that the gun I had purchased from Rock was taken also from the scene where Duke was shot until I was informed by Latoya Foote. When I got rid of the gun I sold it to Jomane Broadnax "Big Heavy." The private investigator for Gene Broadnax questioned me pertaining to how I acquired the gun and the investigator told me that I was needed to testify at Gene Broadnax's trial being that Rock Brim sold me that gun taken from the scene of the incident. Due to prior pending charges that I had, I went on the run. The fear of being arrested and put in jail is the reason that I did not show up to testify and also I did not know how important my testimony would have been to his case. Had I known I knew I would have been there to testify.

(Pleading No. 15, Attach.)

-10-

Upon review of this claim, it is obvious that there are several problems with Petitioner's Claim (1). First, an assertion of "actual innocence" on the basis of newly-discovered evidence is not cognizable as a substantive habeas corpus claim, at least with regard to the non-capital convictions and sentences such as those now before the court. While a claim of actual innocence does not form the basis for an independent claim for relief, it can serve as a "gateway" through which otherwise procedurally defaulted or barred claims may be addressed on the merits under the "miscarriage of justice" exception to the procedural-default rule. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); and *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1817 (2007).

Second, Petitioner's actual claim is that the state courts denied him due process in connection with his Motion for Appropriate Relief, the collateral relief procedure available to convicted persons in North Carolina.[1] He asserts that the state courts wrongly denied him collateral relief from his conviction for second-degree murder despite his contentions regarding newly-discovered evidence. However, claims of error relating to state collateral proceedings are generally not reviewable in habeas corpus. *See Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998).

Third, although Petitioner styles his first claim under the rubric "newly discovered evidence," the record is clear that the evidence in question – the acquisition of a chrome gun

---

[1] Petitioner also raised his newly-discovered evidence claim in his "Motion for Preservation and Test All Physical Evidence Not Test [sic] Prior to Trial."

-11-

by Antonio Bridges from Rock Brim – was actually known to Petitioner and his defense team prior to Petitioner's trial in 2001. Antonio Bridges stated in his affidavit that a private investigator for Petitioner talked with him about how Bridges acquired the chrome gun, but Bridges avoided testifying at Petitioner's trial because he was "on the run" from criminal charges. (Pleading No. 15, Bridges Aff.) Petitioner Broadnax, in his own affidavit, states that he told his trial attorneys about the evidence prior to trial and they promised to introduce pictures of the gun or the gun itself (allegedly previously recovered from Jomane Broadnax), but failed to do so. (*Id.*, Broadnax Aff.) From this, it is apparent that the 2005 affidavit of Antonio Bridges concerning his acquisition of the gun is not "newly discovered evidence" in any sense in this case. Petitioner, proceeding *pro se*, has misunderstood the nature of his legal claim. As a claim of newly-discovered evidence, Claim (1) has no merit simply because the evidence is not newly discovered, but was known by the defense prior to trial.

Moreover, under any legal theory which may be articulated with regard to Claim (1), grounded factually upon the affidavit of Antonio Bridges, Petitioner must be able to show prejudice or harm from the absence of the evidence at his trial. The MAR court denied Petitioner's "newly discovered evidence" claim, ruling that Petitioner "fail[ed] to show that but for the matters brought forth in his Motion, as amended, that there is a reasonable probability of a different outcome." (Pleading No. 15, Attach. ¶ 10.). This Court, sitting in habeas review, may grant relief to the Petitioner only if this state court ruling was contrary to, or involved an unreasonable application of clearly established federal law, as determined

-12-

by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). It is, of course, settled law that a habeas petitioner must show that any alleged error had a "substantial and injurious effect or influence." *See California v. Roy*, 519 U.S. 2, 5 (1996)(*per curiam*). This standard is roughly equivalent to the prejudice standard in ineffective assistance of counsel claims. *See Arnold v. Evatt*, 113 F.3d 1352, 1362 (4th Cir. 1997).

In the case at bar, it was not unreasonable for the MAR court to conclude that Petitioner Broadnax had not shown harm, to the level of the constitutional standard, from the absence of the Bridges evidence at trial. The Bridges statement has its own inherent shortcomings. It dates from 2005, approximately five-and-one-half years after the shooting of victim Timothy Galloway, and is authored by a person who reveals that he was under pending criminal charges in 2001 and was avoiding arrest. The most arguably relevant portion of the affidavit – to the effect that Bridges later learned from Latoya Foote that the gun Bridges purchased from Rock Brim had been taken from the crime scene – is inadmissible hearsay which could not have been considered in that form by Petitioner's jury. Nonetheless, despite these weaknesses of the "new evidence," the Court will consider all of the averments of the affidavit in assessing possible prejudice to Petitioner from its absence at trial.

Even assuming that all of the statements of Antonio Bridges could have been presented in some fashion at Petitioner's trial, it was not unreasonable for the MAR court to find a lack of sufficient prejudice to sustain a constitutional challenge to Petitioner's

-13-

conviction. On the evidence before the jury, Petitioner Broadnax was clearly the aggressor who armed himself with a gun and went looking for Timothy Galloway after Galloway assaulted Petitioner's cousin, Michael Artis. While driving around looking for Galloway, Petitioner, according to Wayne Artis, fired his gun into the air at least twice. (Tr. Vol. IV at 904-05.) After the shooting, which Petitioner contends was in self-defense, Petitioner told eye-witness Charles Broadnax to keep his mouth shut. Petitioner gave his gun to Curtis Grant and, according to Grant, requested that Grant wipe Petitioner's fingerprints off the gun and dispose of it. (*Id.* at 937, 940-41.)

Petitioner Broadnax, in testimony at trial, directly contradicted important testimony given by several apparently unbiased witnesses. Petitioner did not deny that he armed himself and went looking for Timothy Galloway. He did, however, accuse Wayne Artis of firing the shot or shots into the air from the pick-up truck. (Trial Tr. Feb. 20, 2001 at 23.) Further, he denied telling Curtis Grant to wipe Petitioner's fingerprints from the gun before disposing of it. Instead, Petitioner testified that after Petitioner shot Timothy Galloway, Grant asked for the gun and, later that morning, told Petitioner that he had "wiped the gun down and buried it." "So," Petitioner testified, "I didn't think no more about it." (*Id.* at 50.) Petitioner, who was pleading self-defense and thus admitting the intentional shooting of the victim, testified that he feared for his life when Timothy Galloway started going to his pocket and pulled out "some chrome," a gun. (*Id.* at 27.) Petitioner stated at trial that he said twice (as Charles Broadnax corroborated), "[D]on't go to your pocket," but when he saw the gun

-14-

in the victim's hand he pulled his gun and "shot twice up in the air and I don't know where they [the bullets] went." (*Id.*) The victim, who was face-to-face with Petitioner, only four to five feet away, was shot in the chest and face. Petitioner testified that he saw Charles Broadnax at the scene and told him, "You better tell the truth or keep your mouth shut" (*Id.* at 29), a significantly modified version of Charles Broadnax's earlier testimony to the effect that Petitioner told him, "you better shut your mouth." (Tr. Vol. IV at 846.)

After reviewing all of the evidence, the Court finds that it was not unreasonable for the MAR court to weigh all the evidence and to discount much of Petitioner's trial testimony as not credible on key points. Further, the jury verdict itself speaks to the issue of prejudice because the jury refused to find self-defense even though the evidence before it was uncontradicted (as related by both Charles Broadnax and Petitioner) that Petitioner twice told the victim not to go to his pocket [for a gun] before Petitioner drew his gun and fired.

Of course, it is central to Petitioner's claim that the Bridges affidavit be "new" evidence – evidence not presented at trial. But, in fact, evidence quite similar to that proffered by Bridges was introduced by defense counsel at Petitioner's trial, and the jury convicted Petitioner despite this evidence. Desmond Martin testified on Petitioner's behalf that he saw Charles Broadnax and a person named Rock together after the shooting. According to Martin, Charles Broadnax bought crack from Rock, the two left together, and Rock returned, displaying and trying to sell a .380 automatic or nine millimeter gun that was a "dull chrome" in color. (Tr. Vol. V at 1158-63.) No evidence was introduced by the

-15-

prosecution to contradict Desmond Martin's testimony. Defense counsel argued this line of evidence, attempting to persuade the jury that the presence of a second gun at the crime scene, a chrome gun that was subsequently stolen by Charles Broadnax and sold or traded to Rock Brim, exonerated Petitioner from all guilt. (Trial Tr. Feb. 20, 2001 at 37-38.) The jury disagreed.

In sum, the Court finds that the "newly discovered evidence" that Petitioner proffered to the MAR court was at least partially cumulative and duplicative of other evidence that was introduced at trial. Given the full weight of the evidence against Petitioner at trial, including Petitioner's own testimony that contradicted disinterested witnesses on critical points, it was not unreasonable for the MAR court to conclude that Petitioner had failed to show a reasonable probability of a different outcome had the Bridges evidence been available for use at trial. Under the standard of 28 U.S.C. § 2254(d)(1), Petitioner's Claim (1) entitles him to no relief. This Court does not review Petitioner's constitutional claim "de novo," but reviews the state court's adjudication of that claim under a standard of reasonableness in light of settled federal law. For all the reasons discussed above, the Court concludes that the state court reached a not unreasonable decision in finding no error of a constitutional magnitude.

## C.    Claim (9)

In Claim (9), Petitioner Broadnax asserts the he received ineffective assistance of trial counsel in a number of respects. To establish a Sixth Amendment claim such as that attempted here, Petitioner must show (1) a dereliction of counsel and (2) a reasonable

-16-

probability of a different outcome but for counsel's error. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner's assertions under this claim are difficult to decipher, as he has alluded to alleged errors of counsel in various places, and under various other claims, in his petition. In his response to the State's summary judgment motion, Petitioner states that his trial attorneys were ineffective for failing to introduce a picture of the gun allegedly taken from the crime scene. This claim of attorney error is essentially a reformulation of Claim (1) regarding "newly discovered evidence." The Court has discussed that claim regarding the "chrome gun" at length above, and the claim is without merit as a Sixth Amendment claim for the reasons set out by the Court with regard to Claim (1). Petitioner can show no prejudice sufficient to support a habeas claim for relief.

Petitioner claims also that trial counsel failed to have the decedent's pockets and hands checked for powder residue, failed to subpoena witnesses Franky Cannon and Joseph Jenning, failed to cross-examine Curtis Grant, and failed to employ a crime-scene expert. (Pleading No. 15 at 7-11.) Careful review shows that none of these claims are meritorious. Petitioner has failed to show, as to any of these allegations, how he was prejudiced by the alleged failure of counsel; that is, he has failed to show what materially helpful evidence or testimony would have been uncovered had trial counsel taken the actions Petitioner now says they should have. Accordingly, all of Petitioner's claims of ineffective assistance of trial counsel are conclusory and speculative and do not support a claim for relief or a request for

-17-

an evidentiary hearing. *See generally, Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992).

**D.    Claim (10)**

Petitioner contends that the State violated his right to due process of law by withholding favorable evidence. He points to two pretrial statements, one by Elise Nelson and another by Angela Pulliam in support of this claim. Petitioner states that the State failed to disclose the Nelson statement to the effect that the victim often carried two guns, had a lot of enemies, and often carried a large amount of cash. Petitioner contends this statement tended to show that the victim was in fact carrying a gun on the night of the shooting. The Pulliam statement, according to Petitioner, would have tended to show that Petitioner did not take a gold chain from the victim after shooting him, but rather obtained it elsewhere, earlier in the evening when it was found on the floor of the apartment bathroom where Timothy Galloway had fought with Michael Artis.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the prosecution must disclose to the defendant evidence that is both favorable and material to either guilt or punishment. Undisclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)(internal quotation marks and citations omitted).

-18-

Petitioner's claim regarding the Nelson statement is without merit since it is undisputed that the State disclosed to the defense prior to trial the substantial equivalent of the particular statement claimed to be withheld. As shown in the State's answer to Petitioner's MAR, the prosecutor furnished to defense counsel, prior to trial, Nelson's recorded statement that "I did know that Duke [Timothy Galloway] was selling drugs and sometimes he carried a 25 cal. auto." (Pleading No. 7, Ex. 7 ¶ VI.) This statement is essentially the same as the separate Nelson pretrial statement, attached by Petitioner to his brief in response to the State's summary judgment motion, that "Duke had two .25 pistols and that he sometimes carried them." (Pleading No. 15, Attach. at 000213.)

Petitioner's *Brady* claim regarding the Pulliam pretrial statement that tended to show that Petitioner obtained a gold chain on the night of the shooting from a source other than robbery of the victim is deficient for the simple reason that Angela Pulliam gave precisely the same information in her trial testimony as was within the allegedly withheld statement. (Tr. at 1149-52.) Petitioner can show no probability of a different outcome had the statement been disclosed pretrial since the evidence in question came before the jury at the time of trial. Significantly, Petitioner was not charged with felony-murder on the basis of an alleged armed robbery of the gold chain, but was instead charged on the basis of being a felon-in-possession-of-a-firearm. He was acquitted by the jury of felony-murder.

Petitioner's two *Brady* claims are without merit.

-19-

E.    **Procedural Default**

The State contends that a number of Petitioner's claims were procedurally defaulted before the state courts and should not be reached by this Court on the merits.  Specifically, the State contends that the following claims of the petition are barred from federal review as a result of procedural defaults: Claims (5), (6), (7), and most of Claim (9).  A review of the state court records shows that Claims (6) and (7) and portions of Claim (9)[2] were not properly raised before the state courts on appeal or in collateral proceedings.  If Petitioner were now to return to the state courts for review of these claims, he would face a mandatory imposition of procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b) (2005) (providing that a claim shall be denied if a petitioner was in a position to raise the claim on appeal or in a prior motion for appropriate relief, but failed to do so, absent cause and prejudice or a fundamental miscarriage of justice).  Petitioner has made no showing of cause and prejudice with regard to these defaults.

Petitioner raised Claim (5) and portions of Claim (9)[3] in his MAR filed in state superior court.  The superior court found the claims procedurally barred under N.C. Gen.

---

[2]  Claim (9) is a claim of ineffective assistance of trial counsel.  The claim includes allegations that counsel failed to call certain witnesses, failed to employ a crime scene expert, and failed to employ an expert to testify that moving the victim's body caused his death.  These specific allegations were not properly presented to the state courts.

[3]  Petitioner raised in his state MAR Sixth Amendment violation allegations regarding trial counsel's failure to follow up on a discovery motion, have the victim's hands and pants examined for gun-powder residue, and call certain witnesses.  These claims were dismissed as procedurally barred by N.C. Gen. Stat. § 15A-1419 for Petitioner's failure to raise them on direct appeal.

Stat. § 15A-1419 for Petitioner's failure to present them on direct appeal. The court also found no cause and prejudice with regard to the default. Petitioner has not shown to this Court either cause or prejudice with respect to these defaults.

To the extent Petitioner attempts to show "actual innocence" on the basis of "newly discovered evidence," the Court finds, for reasons discussed under Claim 1, that this showing is inadequate to excuse Petitioner's procedural defaults. *See Royal v. Taylor*, 188 F.3d 239, 243-44 (4th Cir. 1999)(to establish "actual innocence" to excuse a procedural default, a petitioner must show that if the new evidence in question were introduced, it is more likely than not that no reasonable jury would convict.) Accordingly, although the Court has discussed the merit (*i.e.*, the lack of merit) of these claims, that discussion is in the alternative, and the actual ground of dismissal under this memorandum order is procedural default.

## Conclusion

For reasons set forth above, **IT IS ORDERED** that the State's summary judgment motion (Pleading No. 5) is **GRANTED**, and that Petitioner's motion for an evidentiary hearing (Pleading No. 14), motion for appointment of counsel (Pleading No. 18), and motion requesting an order for polygraph testing (Pleading No. 19) are **DENIED**.

A separate judgment dismissing this action with prejudice will be entered contemporaneously with this Memorandum Opinion and Order.[4]


                                                            /s/ P. Trevor Sharp
                                       United States Magistrate Judge


Date: March 19, 2008

---

[4] The parties have consented to the jurisdiction of the Magistrate Judge, and this matter has been referred to the undersigned for all proceedings. *See* 28 U.S.C. § 636(c).